# UNITED STATES DISTRICT COURT
for the
Eastern District of Wisconsin

In the Matter of the Search of:

Cellular telephone assigned telephone number
414-949-9152, more fully described in Attachment A.

Case No. 17-915 M (NJ)

## APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

Cellular telephone assigned telephone number 414-949-9152, more fully described in Attachment A.

over which the Court has jurisdiction pursuant to Title 18, United States Code, Sections 2703 and 2711, there is now concealed:

See Attachment B.

The basis for the search under Fed. R. Crim P. 41(c) is:
☒ evidence of a crime;
☐ contraband, fruits of crime, or other items illegally possessed;
☐ property designed for use, intended for use, or used in committing a crime;
☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to violations of:
21 USC § 846, conspiracy to distribute controlled substances.

The application is based on these facts: See attached affidavit.

☒ Delayed notice of __30__ days (give exact ending date if more than 30 days: ) is requested
under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Mark Gorenc, DEA Special Agent
*Printed Name and Title*

Sworn to before me and signed in my presence:

Date: July 20, 2017

*Judge's signature*

City and State: Milwaukee, Wisconsin     Nancy Joseph, U.S. Magistrate Judge
*Printed Name and Title*

## AFFIDAVIT IN SUPPORT OF
## AN APPLICATION FOR A SEARCH WARRANT

I, Mark Gorenc, being first duly sworn, hereby depose and state as follows:

### INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant under Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c)(1)(A) for information about the location of the cellular telephone assigned call number 414-949-9152 (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas. The Target Cell Phone is described herein and in Attachment A, and the location information to be seized is described herein and in Attachment B.

2. I am a Special Agent with the Drug Enforcement Administration ("DEA"). I have been so employed since September 1996. Prior to my employment with DEA, I was employed as a police officer with the Franklin, Wisconsin Police Department for approximately six months. Prior to that, I was a deputy sheriff with the Milwaukee County Sheriff's Department for approximately two years.

3. As part of my duties as a DEA Special Agent, I investigate criminal violations relating to narcotics trafficking offenses, including criminal violations of the Federal Controlled Substance laws, including, but not limited to Title 18, United States Code, Sections 1956 and 1957, and Title 21, United States Code, Sections 841, 843, 846, 848, 952, and 963. I have been involved with various electronic surveillance methods, the debriefing of defendants, informants, and witnesses, as well as others who have knowledge of the distribution, transportation, storage, and importation of controlled substances.

4. I have received training in the area of narcotics investigations, money laundering, financial investigations, and various methods which drug dealers use in an effort to conceal and

launder the proceeds of their illicit drug trafficking enterprises. I have participated in numerous investigations involving violations of narcotics laws.

5. I have participated in investigations that have led to the issuance of search warrants involving violations of narcotic laws. These warrants involved the search of locations including: residences of targets, their associates and relatives, "stash houses" (houses used as drug/money storage locations), storage facilities, bank safe deposit boxes, cellular/camera phones, and computers. Evidence searched for and recovered in these locations has included controlled substances, records pertaining to the expenditures and profits realized from narcotics trafficking, monetary instruments and various assets that were purchased with the proceeds of the drug trafficking.

6. This affidavit is based upon my personal knowledge and upon information reported to me by other federal and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. Throughout this affidavit, reference will be made to case agents. Case agents are those federal, state, and local law enforcement officers who have directly participated in this investigation, and with whom your affiant has had regular contact regarding this investigation.

7. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of, and to make arrests for, federal felony offenses.

8. Based on the facts set forth in this affidavit, there is probable cause to believe that Theresa LEWIS has violated, and is continuing to violate, Title 21, United States Code, Sections 841 and 846. There is also probable cause to believe that the location information described in

Attachment B will constitute evidence of these criminal offenses and will lead to the identification of other individuals who are engaged in the commission of these offenses.

## PROBABLE CAUSE

9. On February 28, 2017, Special Agents from the Wisconsin Department of Justice, Division of Criminal Investigation (DCI), conducted an interview of an identified citizen witness who wished to be a confidential source (CS-1). During the interview, CS-1 explained that he/she has been in contact with Theresa LEWIS. Through a phone conversation, LEWIS told CS-1 that she (LEWIS) was making trips to Texas to pick up cocaine shipments with "Lil Steve" and "Lil Mike". CS-1 explained that "Lil Steve" is Theresa LEWIS's cousin, who agents identified as Stephen LEWIS. Stephen LEWIS had previously purchased one (1) to two (2) kilograms of cocaine per month from CS-1. CS-1 gave DCI Theresa LEWIS' telephone number as 414-949-9152.

10. CS-1 further explained that during the course of their drug distribution history, CS-1 referred to the cocaine source location in Texas as "home away from home" during conversations with Theresa LEWIS. In recorded phone conversations, LEWIS told CS-1 that she (LEWIS) was going to their "home away from home" with "Lil Steve" and was being paid $1,200 to make the trips approximately once a month.

11. For several reasons, case agents believe CS-1 to be reliable and credible. First, CS-1 has been providing information since February 2017. Second, the information CS-1 has provided is substantially against CS-1's penal interest. Third, the information provided by CS-1 is consistent with evidence obtained elsewhere in this investigation and portions of CS-1's information have been corroborated through phone records and independent law enforcement investigation. CS-1 is currently incarcerated for possession with intent to distribute cocaine and

3

has prior drug and resisting arrest convictions. CS-1 is cooperating in the hopes of having the sentence she/he is currently serving reduced.

12. A DCI S/A obtained Sprint tolls for suspect telephone 414-949-9152 through a subpoena.

13. On March 1, 2017, a DCI S/A reviewed historical call records from Sprint of Theresa LEWIS's identified telephone number of 414-949-9152. The records showed call information from December 30, 2016 thru February 27, 2017. Upon examining the tolls, it was observed that the above listed number was still being operated and utilized by Theresa LEWIS. Upon analyzing the telephone records, it was noted that Theresa LEWIS's telephone number of 414-949-9152 had 26 total calls and 50 text messages to the telephone number of 972-734-1111 (a Dallas, Texas telephone associated with several Milwaukee area drug cases). A DEA S/A obtained information for suspect telephone 972-734-1111 through a subpoena. The subpoena revealed the telephone number to be an inmate communications provider.

14. On April 27, 2017, DCI and DEA met with members of the Milwaukee FBI Task Force who indicated that the FBI has an open drug investigation with links to Stephen LEWIS. Task Force Officers (TFO) also stated that Stephen LEWIS was suspected of being one of the "runners" for the large scale heroin and cocaine distribution network.

15. On May 3, 2017, FBI TFO's met with a FBI CS (CS-2) who stated that Eugene TILLMAN purchases large amounts of cocaine through Anthony LEWIS. CS-2 stated he/she has known TILLMAN to go through Anthony LEWIS for the past two months, however TILLMAN previously went through Anthony's brother, Stephen LEWIS. The CS stated he/she has personally been with TILLMAN approximately 10 to 20 times when he (TILLMAN) purchased cocaine from Anthony LEWIS. CS-2 stated the weight of the cocaine purchased varied among 2.25, 4.5 and 9

4

ounce quantities. CS-2 stated Anthony LEWIS charged TILLMAN $1,000 per ounce of cocaine, however the price would be discounted for larger purchases. CS-2 stated approximately three months ago, they were personally with TILLMAN twice when he purchased cocaine from Stephen LEWIS. CS-2 stated TILLMAN purchased 2.25 and 4.5 ounces from Stephen LEWIS respectively on the two occasions.

16. For several reasons, case agents believe CS-2 to be reliable and credible. First, CS-2 has made more than 5 controlled purchases of drugs while under law enforcement direction. Second, CS-2 has also made a controlled purchase of a firearm under law enforcement direction. Third, CS-2 has been providing information on this investigation and other investigations since December 2016. Forth, CS-2 had provided information leading to the apprehension and arrest of a homicide suspect. Fifth, the information CS-2 has provided is substantially against CS-2's penal interest. Sixth, the information provided by CS-2 is consistent with evidence obtained elsewhere in this investigation and portions of CS-2's information has been corroborated through phone records and independent law enforcement investigation. CS-2 is cooperating with law enforcement in exchange for potential benefits on pending federal felon in possession of a firearm charges from 2017. CS-2 has a prior Wisconsin state conviction for possession of narcotic drugs in 2013.

17. On May 8, 2017, a DCI S/A received information from CS-1 who explained that during a call with Theresa LEWIS on May 3, 2017, Theresa LEWIS said that she was getting ready to "make a trip" over the weekend. Theresa LEWIS told CS-1 that immediately upon returning from "the trip" she would drop it (believed to be drugs) off at Stephen LEWIS' aka "Lil Steve's" house and get paid by him.

5

18. On July 10, 2017, CS-1 sent a correspondence to case agents advising that CS-1 spoke to Theresa LEWIS while she was in Texas picking up cocaine on July 8, 2017.

19. Results from a DEA subpoena on April 27, 2017 and July 13, 2017 confirmed that telephone number 414-949-9152 is subscribed to Theresa LEWIS at 2126 N. 23rd Street in Milwaukee, WI 53205. The telephone number is listed to Sprint Spectrum L.P. and has not been ported.

20. Based upon my training and experience, I know that individuals involved in drug trafficking use their cellular telephones to contact other drug dealers and drug purchasers, and that information relating to their telephones may show the areas in which they are trafficking drugs and the individuals who they are contacting to sell or distribute the drugs. Based upon the facts in this affidavit, there is probable cause to believe that Theresa LEWIS is engaging in the trafficking and distribution of cocaine and is utilizing the telephone number 414-949-9152 to further these crimes. A DCI S/A has confirmed through CS-1 that Theresa LEWIS does not utilize her vehicle and suspects LEWIS' use of rental vehicles to facilitate travel, both in the state of Wisconsin and beyond state lines.

21. In my training and experience, I have learned that Sprint is a company that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate at least two kinds of information about the locations of the cellular telephones to which they provide service: (1) E-911 Phase II data, also known as GPS data or latitude-longitude data, and (2) cell-site data, also known as "tower/face information" or cell tower/sector records. E-911 Phase II data provides relatively precise location information about the cellular telephone itself, either via GPS tracking technology built into the phone or by triangulating on the device's signal using data from several of the

provider's cell towers. Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected. These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas. Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device. Accordingly, cell-site data is typically less precise that E-911 Phase II data.

22. Based on my training and experience, I know that Sprint can collect E-911 Phase II data about the location of the Target Cell Phone, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available.

23. Based on my training and experience, I know that Sprint can collect cell-site data about the Target Cell Phone.

## AUTHORIZATION REQUEST

24. Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to Federal Rule of Criminal Procedure 41 and 18 U.S.C. § 2703(c).

25. I further request, pursuant to 18 U.S.C. § 3103a(b) and Federal Rule of Criminal Procedure 41(f)(3), that the Court authorize the officer executing the warrant to delay notice until 30 days after the collection authorized by the warrant has been completed. There is reasonable cause to believe that providing immediate notification of the warrant may have an adverse result, as defined in 18 U.S.C. § 2705. Providing immediate notice to the subscriber or user of the Target Cell Phone would seriously jeopardize the ongoing investigation, as such a disclosure would give that person an opportunity to destroy evidence, change patterns of behavior, notify confederates,

and flee from prosecution. *See* 18 U.S.C. § 3103a(b)(1). As further specified in Attachment B, which is incorporated into the warrant, the proposed search warrant does not authorize the seizure of any tangible property. *See* 18 U.S.C. § 3103a(b)(2). Moreover, to the extent that the warrant authorizes the seizure of any wire or electronic communication (as defined in 18 U.S.C. § 2510) or any stored wire or electronic information, there is reasonable necessity for the seizure for the reasons set forth above. *See* 18 U.S.C. § 3103a(b)(2).

26. I further request that the Court direct Sprint to disclose to the government any information described in Attachment B that is within the possession, custody, or control of Sprint for a time period of 45 days from the date the warrant is signed. I also request that the Court direct Sprint to furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the information described in Attachment B unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall reasonably compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

27. I further request that the Court authorize execution of the warrant at any time of day or night, owing to the potential need to locate the Target Cell Phone outside of daytime hours.

## ATTACHMENT A

### Property to Be Searched

1. The cellular telephone assigned call number 414-949-9152 (the "Target Cell Phone"), whose service provider is Sprint, a wireless telephone service provider headquartered in Overland Park, Kansas.

2. Information about the location of the Target Cell Phone that is within the possession, custody, or control of Sprint, including information about the location of the cellular telephone if it is subsequently assigned a different call number.

## ATTACHMENT B

### Particular Things to be Seized

1. All information about the location of the Target Cell Phone described in Attachment A for a period of forty-five days from the date the warrant is signed, during all times of day and night. "Information about the location of the Target Cell Phone" includes all available E-911 Phase II data, GPS data, latitude-longitude data, and other precise location information, as well as all data about which "cell towers" (i.e., antenna towers covering specific geographic areas) and "sectors" (i.e., faces of the towers) received a radio signal from the cellular telephone described in Attachment A.

2. To the extent that the information described in the previous paragraph (hereinafter, "Location Information") is within the possession, custody, or control of Sprint, Sprint is required to disclose the Location Information to the government. In addition, Sprint must furnish the government all information, facilities, and technical assistance necessary to accomplish the collection of the Location Information unobtrusively and with a minimum of interference with Sprint's services, including by initiating a signal to determine the location of the Target Cell Phone on Sprint's network or with such other reference points as may be reasonably available, and at such intervals and times directed by the government. The government shall compensate Sprint for reasonable expenses incurred in furnishing such facilities or assistance.

3. This warrant does not authorize the seizure of any tangible property. In approving this warrant, the Court finds reasonable necessity for the seizure of the Location Information. *See* 18 U.S.C. § 3103a(b)(2).